DICK *v.* SUPREME BODY OF THE INTERNATIONAL CONGRESS.

1. BENEFICIAL ASSOCIATIONS—TRIBUNALS—HEARINGS—OBJECTIONS TO EVIDENCE—WAIVER.

Where, at the hearing of his claim before the tribunal of a beneficial association, the beneficiary objects to the introduction of certain evidence, and his objection is overruled, he cannot be held to have waived his objection on appeal by not

appearing, where he is told that appearance is unnecessary and that his claim will be properly presented and considered in his absence.

2. SAME—HEARINGS—RULES OF EVIDENCE.

The validity of a decision of the tribunal of a beneficial association is not lessened by the circumstance that technical rules for the admission of evidence were disregarded. Within the limits of common fairness such tribunals may prescribe their own rules of evidence.

3. SAME—WITNESSES—COMPETENCY—PHYSICIANS.

Section 10181, 3 Comp. Laws, forbidding the disclosure by physicians of information acquired in attending patients, applies as well to hearings before the tribunals of beneficial associations as to proceedings in the courts of the State.

4. SAME—TRIBUNAL OF ORDER—CONCLUSIVENESS OF DECISION.

The decision of the supreme tribunal of a beneficial association, on appeal by a beneficiary, is not conclusive, though so provided by its by-laws, where the tribunal receives and acts upon the testimony of a physician admitted in violation of § 10181, 3 Comp. Laws.

5. SAME—ASSAILING CONCLUSIVENESS—LAW AND EQUITY.

The conclusiveness of an adjudication of the supreme tribunal of a beneficial association as to liability on a membership certificate may be questioned, not only in equity but in a court of law, when set up as a defense to an action on the certificate.

HOOKER and GRANT, JJ., dissenting.

Error to Wayne; Mandell, J. Submitted October 21, 1904. (Docket No. 75.) Decided December 7, 1904.

Assumpsit by Emma C. Dick against the Supreme Body of the International Congress on a policy of insurance. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Affirmed.

*W. G. Howard,* for appellant.

*Walker & Spalding,* for appellee.

CARPENTER, J. Plaintiff's husband, John A. Dick, died July 10, 1901. At that time he was a member of

defendant order, and, as such, his life was insured for the sum of $1,000. Plaintiff was his beneficiary, and she brought this suit to recover said insurance. She obtained a verdict and judgment in the court below.

Defendant contends that a verdict should have been directed in its favor, because this controversy had been determined in its favor by the tribunals of its order, and that such determination was final. The question raised by this claim is the only one we are called upon to consider. The facts essential to an understanding of this question are these:

The by-laws of defendant provide that the supreme board of trustees—

"Shall pass on all death claims. * * * If, in its judgment, any such claim is not a valid one, they shall notify * * * the beneficiary, * * * and fix the time * * * when the claimants or their attorneys may appear before the supreme board of trustees * * * and present such evidence, either orally or by affidavit, as they may have to establish the justness of said claim, and the said supreme board of trustees shall try, hear, and decide upon the justness and the validity of such claims, and their decisions shall be binding * * * unless an appeal is taken to the supreme body. * * * It, the supreme body, shall have the power when an appeal is made * * * to decide as to the validity of all death claims, * * * and its decisions shall be final and binding upon every member and his beneficiaries. No suit at law or equity shall be commenced or maintained by any member or beneficiary against the supreme body."

Defendant's board of trustees, suspecting that decedent had obtained his insurance by making false statements respecting his condition of health, notified plaintiff that, in their judgment, her claim was not valid. A hearing was had before them, and the claim rejected. On this hearing plaintiff presented several affidavits tending to prove the validity of her claim. The only other testimony was the statement of defendant's general manager. This witness narrated a conversation between himself and deced-

ent's physician in which the latter said that deceased came to him in January, 1900, and stated that he became sick in February, 1899, and had lost 50 pounds in this interval. This statement, which tended to prove that the insurance had been obtained by false statements, was objected to as incompetent, hearsay, and privileged, but it was nevertheless received and acted upon. From this decision rejecting her claim plaintiff appealed to the defendant body. Neither she nor her counsel was present when her case was there considered. They were told it was not necessary for them to be present, and led to believe that the case would be heard on substantially the same testimony as that introduced before the board of trustees. And it was so heard. The affidavits of plaintiff were laid before the appellate tribunal, but, instead of the hearsay statement of the physician, his affidavit stating substantially the same facts was introduced. That tribunal rejected plaintiff's claim.

Can we say, as a matter of law, that this determination was binding upon plaintiff? If we can, the judgment of the lower court should be reversed. If we cannot, it should be affirmed.

Defendant not only used the physician's affidavit as testimony, but, it is to be inferred, based its decision solely upon such affidavit. Section 10181, 3 Comp. Laws, prohibits the use of such testimony on the ground that it violates a sacred confidential relation. If plaintiff had a right to invoke this law, it cannot be said that she waived that right. Through her counsel she objected to this testimony in the lower tribunal, and defendant's officers had no right to assume that she withdrew this objection in the appellate tribunal. It may therefore be inferred that defendant willfully introduced the testimony under consideration, and upon such testimony rendered a decision adverse to plaintiff. From this conduct, can any inference unfavorable to the validity of the adjudication pronounced by defendant be drawn?

It is clear that the validity of adjudications of this char-

acter is not lessened by the circumstance that technical rules for the admission of evidence are disregarded. See *Derry* v. *Great Hive L. O. T. M. M.*, 135 Mich. 494, *Barker* v. *Great Hive L. O. T. M. M.*, 135 Mich. 499. It is likewise true that within the limits of common fairness such tribunals may prescribe their own rules of evidence. *Derry* v. *Great Hive L. O. T. M. M.*, *Barker* v. *Great Hive L. O. T. M. M.*, supra. And I think it is also true that no error of such tribunals in admitting testimony will be considered by a court unless such error affected its decision. But it must not be supposed that such tribunals are above the lawmaking power of the State. They have no right to violate any law which that power prescribes for their guidance. And if such violation results in their depriving a claimant of the hearing to which he is lawfully entitled, their adjudications are of no legal effect. See *Rose* v. *Supreme Court, Order of Patricians*, 126 Mich. 577.

Did defendant violate a law which was prescribed for its guidance when it admitted in evidence the affidavit in question? The legislature has said:

"No person duly authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient." Section 10181, 3 Comp. Laws.

If this statute applied to its proceedings, defendant flagrantly violated it. Did it apply? The proceedings were in their nature judicial, and there can be no doubt that the legislature had power to prescribe rules which it was defendant's duty to observe. Did the statute prescribe such a rule? "The statute is one passed for the sole purpose of enabling persons to secure medical aid without betrayal of confidence." See *Grand Rapids, etc., R. Co.* v. *Martin*, 41 Mich. 671. Did the legislature, in passing this statute, which prescribes a rule of evidence to be observed in judicial proceedings, intend to permit this confidence to be betrayed in any judicial proceedings which it had the power to regulate? To impute any such inten-

tion to the legislature is to assume that it designed to defeat its manifest purpose.    There is nothing in the statute to limit its operation to any particular judicial tribunal or to any particular class of judicial proceedings.    We must therefore assume that it was intended to extend to all proceedings of a judicial character which the legislature had the power to regulate.    This statute was, therefore, in my judgment, violated when the physician's affidavit was used as testimony.    See *Fennimore* v. *Childs*, 6 N. J. Law, 386; *Gallagher* v. *Kern*, 31 Mich. 138.

Did this violation of the statute deprive plaintiff of the hearing to which she was lawfully entitled ?    Plaintiff was entitled to the hearing prescribed by defendant's by-laws. The construction which defendant itself placed on these by-laws—and, in my judgment, their proper and necessary construction—required it to dispose of controversies upon testimony of some character produced before it at a time and a place where plaintiff had an opportunity of being heard.    We have held, in accordance with fundamental constitutional principles, that an adjudication made by such tribunal is not binding upon a party who is denied the opportunity of being heard.    See *Rose* v. *Supreme Court, Order of Patricians*, supra.

The most obvious and essential rights secured to claimant by the opportunity of being heard are these: The right to present testimony, and the right to hear and meet testimony presented against her.    If her claim was rejected upon testimony obtained when she was not present, and of which she knew nothing, we should not hesitate to say that she was denied the opportunity of being heard, even though permitted to introduce testimony tending to support her claim.    In such a case it would be clear that, though given a hearing in form, claimant was deprived of all advantage of such hearing, and was therefore denied the hearing to which she was lawfully entitled.

Is it not equally clear that when defendant rejected plaintiff's claim because of testimony admitted against objection, and which the law in positive terms forbade it

to consider, that there was a denial of the hearing to which plaintiff was lawfully entitled ? I think it is. Plaintiff was deprived of all the advantages of introducing testimony when that testimony was disregarded by defendant and her case decided upon testimony which it had no lawful right to consider. It was defendant's duty to observe the law prohibiting the use of this testimony. It was plaintiff's right to have that law observed. This right and this duty were just as clear and obvious as if they had been expressly stated in the by-law which provided for the hearing of plaintiff's claim. If such by-law had in express terms provided that this law excluding the physician's affidavit should be observed, no one would for a moment maintain that a determination by defendant in violation of such provision was binding upon plaintiff. Defendant could not insist that such determination complied with the contract which it violated. The only distinction between the supposed case and the actual one is this: In the supposed case the provision for the observance of the law is expressed; in the actual case, that provision is necessarily implied. This distinction affords no ground for the application of a different legal principle. I think, therefore, that plaintiff was denied the hearing to which she was entitled, and was therefore not bound by defendant's adjudication.

I think it may also be said that the statute in question not only forbade the use of the physician's affidavit as testimony, but by necessary implication forbade all judicial tribunals (including the judicial tribunal of defendant) from determining controversies (at least without the consent of parties) upon such testimony. And the law will not permit defendant to retain the unlawful advantage obtained by violating its prohibitions.

If defendant's tribunal had been a court of law, its determination could have been successfully assailed. It is true it could have been assailed in only one way: That is, by review before an appellate constitutional tribunal. Defendant's adjudication cannot be so reviewed, and it

must, therefore, be open to some other kind of an attack, or such tribunals have an authority not possessed by courts established by the Constitution.

It is contended by defendant that the conclusiveness of its adjudication may be assailed only in a court of chancery. But I think it is settled by our decisions that it can be assailed, when it is asserted as a defense, in a proceeding at law. See *Rose* v. *Supreme Court, Order of Patricians,* supra; *Lamson* v. *City of Marshall,* 133 Mich. 250.

To uphold the binding effect of the adjudication made by defendant, we must declare either that the legislature intended to except the judicial proceedings of defendant from the operation of a law which, according to its obvious and natural construction, applies to all judicial proceedings, or we must declare that the defendant has the right, which no other person or body of persons in this State has, to violate at will a constitutional legislative enactment. I think that neither of these alternatives can be accepted, and that the judgment of the court below should therefore be affirmed, with costs.

MOORE, C. J., and MONTGOMERY, J., concurred with CARPENTER, J.

HOOKER, J. (*dissenting*). The plaintiff's husband was a member of the order of the Supreme Body of the International Congress, a mutual benefit association, having been admitted upon an application containing the following agreement:

"This application and the laws of the supreme body now in force or that may hereafter be adopted, are made a part of the contract between myself and the supreme body, and I for myself and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

The certificate issued upon said application was for $1,000, payable to himself and wife as beneficiaries, and was expressly made subject "to the rules, regulations, and by-laws of the defendant then in existence, or which may

thereafter be adopted and subject to the conditions, limita-
tions, and agreements made by the insured in his applica-
tion for membership."

Before and at all times after he became a member the
following by-law, numbered section 54, was in force:

" The supreme board of trustees shall have full power
to suspend a benefit member from all of the benefits of
the order whenever a complaint is made by the commis-
sioner, record keeper, or finance keeper of a subordinate
assembly, or by a deputy supreme commissioner, or deputy
grand commissioner, that such member has obtained his
membership by false representations as to his age, physi-
cal condition, habits, or occupation at the time of his ad-
mission, or who may after his admission become addicted
to the use of opium or narcotics, or form habits which may
injure the health or endanger the life of said member.
Such suspension shall be binding on the member without
a formal trial until the member has by evidence convinced
the supreme board of trustees that such complaint has no
foundation, which he must do within thirty days from the
date of notice mailed him by the supreme record keeper of
the filing of such complaint. The findings and decisions
of the supreme board of trustees in all such cases will be
final. The supreme board of trustees may reinstate a
member so suspended, if at any time it may appear that
the cause for such suspension has been removed."

Under this he was suspended March 29, 1900, and on
April 27, 1900, he was reinstated on furnishing an affida-
vit of good health. He died of cancer in July, 1901. Sec-
tions 55 and 102 of the by-laws are as follows, viz.:

"SEC. 55. The supreme board of trustees shall pass on all
death claims arising from the death of a member holding
a supreme body benefit certificate, and on all disability
claims. If in its judgment any such claim is not a valid
one, they shall notify the claimant of disability benefits,
or the beneficiaries or beneficiary of the deceased member
thereof, and fix a time which shall not be less than sixty
nor more than one hundred and twenty days from the date
of such notice when the claimants or their attorneys may
appear before the supreme board of trustees, at the office
of the supreme record keeper, or some other place to be
designated by the supreme board of trustees, and present

such evidence, either orally or by affidavit, as they may have to establish the justness of said claim, and the said supreme board of trustees shall try, hear, and decide upon the justness and validity of such claims, and their decision shall be binding on such claimants unless an appeal is taken to the supreme body. The notice of such appeal from the decision of the supreme board of trustees must be filed with the supreme record keeper within sixty days thereafter. The decision of the supreme board of trustees, unless an appeal is taken to the supreme body, in all such ɩ cases shall be final, and no suit at law or in equity shall be commenced or maintained by any member or beneficiary against the supreme body."

"SEC. 102. It (the supreme body) shall have the power, when an appeal is made under the laws of the order from the action or findings of the supreme board of trustees, to decide as to the validity of all death claims, or any other claim which a member may have against it, and its decision shall be final and binding upon every member and his beneficiaries, and no suit at law or in equity shall be commenced or maintained by any member or beneficiary against the supreme body."

Proofs of death were seasonably made, and the claim was disallowed by all of the tribunals of the order. Thereupon the plaintiff brought this action upon the contract in a court of law, and recovered a verdict and judgment for $1,110.90, and costs, from which judgment the defendant has appealed.

The real question in this case has to do with the efficacy of the rule contained in sections 55 and 102 of defendant's by-laws, by consenting to be bound by which the deceased took his insurance, upon an agreement that the decisions of the order should be binding upon him and his privy, the beneficiary, whomever might ultimately be such, and that no suit at law or in equity should be commenced or maintained upon the claim.

It would seem to be a very simple proposition that when one made such an agreement he would be bound by it, and could under no circumstances bring an action at law or in equity against the association, if such agreement was valid. That such an agreement is valid is beyond ques-

tion, and is admitted in this case.    It is claimed, however, that the plaintiff is not bound by it under the circumstances of this case, and that in the face of such agreement the beneficiary may still resort to a court of law to enforce a claim upon a policy.    Before entering upon an inquiry as to this question, we will set forth the facts upon which counsel predicate their claim that the case is exceptional.

Upon the presentation of the claim of loss the trustees gave the notice provided for in section 55, and upon the hearing the supreme board of trustees rejected the claim. At said hearing the plaintiff was represented by counsel. Counsel for plaintiff assert that there was evidence tending to show that deceased was in good health down to 1899.    Deceased's application was also introduced, stating that he had never had cancer; also the proofs of loss showing that he died of cancer, and had been ill for two years; also his affidavit, made April 14, 1900, stating that on the date of his examination for insurance, and up to July, 1899, he was in sound bodily health, to the best of his knowledge and belief, and upon which affidavit he was reinstated.    It is stated further that the only other testimony of any kind was a statement by Mr. Harris, defendant's general manager, that he saw deceased's physician, one Robbins, who said that deceased came to him first in January, 1900, and stated that he began to be sick in February, 1899, and lost 50 pounds from that time to the time of his consulting said physician.    This statement was objected to as incompetent, and hearsay, and privileged, and that, therefore, the board had no right to consider it.

Upon the appeal the affidavit of Dr. Robbins, who was the physician referred to, was introduced, in which he made oath to the conversation stated by him to Harris. Plaintiff's counsel was not present.    He had correspondence with the defendant about it, as follows:

"J. O. Becraft,
          "Dowagiac, Mich.
    "*Dear Sir:*   Yours of yesterday at hand with reference to the appeal of Mrs. Dick under Certificate 3,090.   I am

entirely ignorant of the method of procedure in these appeal matters, and I assume that the matter will be taken up on affidavits and showing already on file before your Board.

"Will you kindly advise me if I am correct in that respect, and also whether it would be necessary or advisable for either Mrs. Dick or myself to be present."

"Hon. J. B. Whelan, Justice,
  "Detroit, Mich.

"*Dear Sir:* Your letter to J. O. Becraft, Supreme Record Keeper of the International Congress, has been sent by him to me for reply. You will recollect that I am one of the trustees of the organization. The affidavits and showing made before the Board of Trustees can be used on the appeal; either party can present any additional evidence they desire. It will not be necessary for you or Mrs. Dick to be present unless you desire to be. I will see that the matter of the appeal is submitted to the Supreme Body whether you are there or not if you so desire."

"Hon. W. G. Howard.

"*Dear Sir:* In reference to the Dick claim, I think we will leave it to you to present to the Supreme Body as you suggest in yours of the 13th inst. You all know the facts in the matter, and I could do no good by coming out.

"Please have the Secretary notify me of the action taken by the Supreme Body and oblige."

"John B. Whelan,
  "Detroit, Mich.

"*Dear Sir:* In further answer to your favor of July 9th, 1902, filing appeal in the claim of Emma Dick, beneficiary under Certificate No. 3,090, I beg to advise you that the Biennial Meeting of the Supreme Body will will be called to order at 1 p. m. Tuesday, March 3rd, 1903.                    Yours truly,
                    "J. O. Becraft,
                 "Supreme Record Keeper.
                    "Dic. J. O. B."

The following is a copy of Robbins' affidavit:

"Frederick W. Robbins, M. D., of the city of Detroit, in the said county and State, being duly sworn, says: That he is a practicing physician in the city of Detroit, and has been for a period of eighteen years last past, and

as such physician attended John A. Dick, deceased, in his lifetime. Then he diagnosed said Dick's ailment for the first time January 25, 1900. That said Dick stated to deponent at the time of said diagnosis, that he (Dick) first began to be sick and lose flesh in February, 1899, and from that date up to January 25, 1900 (being the time of said diagnosis), he (the said Dick) had lost fifty pounds in flesh. That deponent, on making said diagnosis, found that said Dick was suffering with cancer of the stomach. At that time could feel no nodular tumor, but a sense of resistance, as if the stomach wall was thickened. On February 6, 1900, hydrochloric acid was absent; lactic acid was present; a tumor was well marked. Thus the previous diagnosis confirmed. Up to this time there is no reason to believe that the said Dick thought himself to have other than chronic dyspepsia. The above facts concerning the diagnosis of said John A. Dick are entered in a book of record of my cases which I keep."

All of the evidence taken upon the first hearing was laid before the supreme body, as counsel for plaintiff had reason to expect it would be from the correspondence. The following are the minutes of that trial:

"Extractions from the minutes of the biennial meeting held March 3rd and 4th, 1903.

"Committees on Appeals and Grievances:—P. P. Harris, Jere Mosher, H. M. Lee.

"The report of the Committee on the claim of Emma C. Dick, beneficiary under Certificate No. 3,090 was then read. The report of the committee is as follows:

"The claim of Emma C. Dick as beneficiary under Certificate No. 3,090 for $1,000.00 issued to John A. Dick, late a member of Cadillac Assembly No. 40, of Detroit, Michigan. John A. Dick was examined for membership of the Order under date of December 23, 1898, and was initiated as a member February 6th, 1899, and his certificate of membership was issued March 7th, 1899. On July 12th, 1901, notice was received of his death July 10th. The Committee find the facts as follows:

"The claim was presented to the Board of Trustees and rejected July 3rd, 1902, and an appeal was taken to this Body. Your Committee return, as part of their report, the evidence bearing on the case for the action of the Supreme Body. It is the opinion of your Committee that the action of the Board of Trustees is correct in this in-

stance, still the whole matter is before the Supreme Body for its action.

"The evidence was then read to the Supreme Body in full, on both sides of the case, and, after considering and discussing the same, it was moved by Brother Fassett, supported by Brother Chandler, that the claim of Emma C. Dick as beneficiary under Certificate No. 3,090 issued to John A. Dick for $1,000.00, brought to this Body by the said claimant on appeal, be, and the same is, hereby rejected. Carried unanimously."

From the foregoing it appears that at the first trial plaintiff was represented by counsel, and could have been at the second. He knew that the evidence previously taken would be introduced at the second, and that other evidence might be. It is apparent that there was, to say the least, a plausible reason for believing that the deceased had misrepresented his true condition, and apparently the defendant's officers so believed, and acted honestly in the rejection of the claim. It is stated by defendant's counsel that "no active fraud or bad faith on the part of the defendant is claimed in this case," and this is not denied.

The court charged:

"I do not charge, and it is not charged here, that this defendant organization was guilty of any moral bad faith, or any fraud, but they were guilty of legal bad faith in hearing this appeal in the manner in which it was heard."

And plaintiff's brief states the question before us thus:

"The only question presented, then, upon this record, is whether a hearing before the tribunals of the order, wherein the only evidence against the claim was a physician's statement of matters which he claimed to have learned from Mr. Dick while acting as his physician, and which were necessary to enable him so to act, and the disclosure of which are therefore forbidden by statute, which evidence was on this ground objected to by plaintiff's attorney, is such a hearing, and whether the decision rejecting the claim solely on this evidence is such a decision, as to bar a suit at law."

She admits the validity of the by-law, but asserts that it does not preclude a suit; that where, "owing to fraud or

138 MICH.—25.

oppression, the hearing provided for by the rules of the order is not such as the party is entitled to, an action at law is maintainable;" and says that "the hearing and decision [of the order] will be vitiated by a disregard of common fairness;" and that "in the case at bar the requirement of common fairness was disregarded by receiving, against objection, a physician's statement, made in violation of the statutory prohibition, of a disclosure claimed to have been made to him by the assured to obtain his medical assistance;" citing 3 Comp. Laws, § 10181.

At the same time she admits that a hearing is not vitiated because the tribunal failed to comply with the technical rules governing courts in the admission of evidence, and this is clearly the rule, as indicated by the cases which she cites; i. e., *Derry* v. *Great Hive L. O. T. M. M.*, 135 Mich. 494; *Barker* v. *Great Hive L. O. T. M. M.*, 135 Mich. 499. We are not aware that it has ever been held that ex parte affidavits and hearsay evidence may not be received and acted upon by such tribunals. They are often convincing, especially when made under strong corroborating circumstances. They are excluded in courts of law under the law of evidence; but can we say that such tribunals as this may not adopt their own rules of evidence? If that right may not be inferred from the two cases last cited, the contrary is certainly not implied.

Counsel apparently concede that there was no fraud. The only oppression mentioned consists in admitting evidence prohibited by the statute. If this was received in good faith, it can hardly be said to have been oppressive. Furthermore, if the society might settle its own rule of evidence, it might lawfully hear this testimony.

The statute is entitled to no such broad interpretation as is claimed for it. It is merely a rule of evidence. It has appeared under the title "Evidence" in the statute ever since the compilation of 1838, and should not receive a construction that would prohibit a communication by a physician to another person. We do not intend to imply, by our failure to deny it, that the rule contended for as to

fraud and oppression is the law. Plaintiff's counsel cite *Rose* v. *Supreme Court, Order of Patricians*, 126 Mich. 577, in support of the claim. That is a case where the plaintiff was denied a trial by the courts of the order, which is a different question from that before us. See *Barker* v. *Great Hive L. O. T. M. M.*, 135 Mich. 499. There are Michigan cases which hold that such agreements as the one before us are binding, except where fraudulent (see *Hembeau* v. *Knights of Maccabees*, 101 Mich. 165; *Fillmore* v. *Knights of Maccabees*, 109 Mich. 13), but in neither of these cases was a jurisdiction based on such fraud or oppression sustained.

We have frequently alluded to the danger of rules based on such foundations, and, as the facts of this case do not justify a discussion of the question, we think it better to leave it until we have before us a case of "fraud or oppression" in the proceedings.

The judgment should be reversed, and a new trial ordered.

GRANT, J., concurred with HOOKER, J.