BULLOCK *v.* MUTUAL LIFE INSURANCE CO. OF NEW YORK.

1. INSURANCE — FRAUD—APPLICATION — LIFE INSURANCE—TREATMENT BY PHYSICIAN.

In an action on an insurance policy not governed by the standard policy act (Act No. 187, Pub. Acts 1907), and under the plea and notice of defendant alleging misrepresentations in the application of insured, who was shown to have stated in his application that he had been treated at a hospital for appendicitis two years previously, but who omitted to state that he had been treated at the same hospital during upwards of a week subsequently, the burden was on plaintiff to show that the treatment at such hospital was for some temporary ailment, not tending to weaken the health of insured permanently.

2. EVIDENCE—PHYSICIANS—PRIVILEGE.

Defendant went as far as it was required to do in examining a physician of deceased, when it showed that his physician had treated him several months at his office and at the hospital, since a further examination would have entered upon privileged matters.

Error to Wayne; Donovan, J. Submitted April 12, 1911. (Docket No. 92.) Decided June 2, 1911.

Assumpsit by Jessie C. Bullock against the Mutual Life Insurance Company of New York, on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Miller, Smith, Paddock & Perry,* for appellant.

*James H. Pound,* for appellee.

STONE, J. The plaintiff brought assumpsit upon a policy of life insurance in the defendant company for $1,000, executed August 19, 1907, to Clyde H. Bullock, and payable. at his death to the plaintiff, his mother. Clyde H. Bullock died April 25, 1909, at the age of 21 years. A written application was made for such insurance, accompanied by a medical examiner's report, both of which were signed by the applicant. Under its plea of the general issue, the defendant gave the following notice:

"Clyde H. Bullock, mentioned in the plaintiff's declaration, in his application dated August 17, 1907, for the policy mentioned in the declaration, warranted the truth of all his statements and answers contained in said application, and all his statements and answers made to defendant's medical examiner in continuation of said application, as set forth in the medical examiner's report; and the said Clyde H. Bullock, in his said application, offered all of his said statements and answers to the defendant as a consideration for the proposed contract to be evidenced by the said policy, which offer was accepted by the defendant.

"The medical examiner's report aforesaid is dated the 19th day of August, 1907, and contains the following questions and answers and statements:

"'3 (a). What illnesses, diseases, or accidents have you had since childhood? (The examiner should satisfy himself that the applicant gives full and careful answers to this question.) Name of disease: Appendicitis. Number of attacks: One. Date of each:

April, 1905, Duration: 1 month. Severity: Was operated upon. Results: Complete cure. Date of complete recovery: May, 1905.

" '3 (b). Have you stated in answer to question 3 (a) all such illnesses, diseases or accidents? Yes.

" '4. State every physician whom you have consulted in the past five years. Name of physician: Dr. J. B. Kennedy. Address: Fine Arts Bldg., Detroit, Mich. When consulted: April, 1905. Nature of complaint. Give full details above under Q. 3 (a): Operated on applicant for appendicitis.

" '13 (a). Have you ever been under treatment at any asylum, cure, hospital, or sanitarium? Yes; Grace Hospital, Detroit, M., appendicitis, 1905. (b) If so, when, how long, and for what? April, 1905, 4 weeks, appendicitis.'

"The applicant certified in writing that his answers to the foregoing questions were correctly recorded by the medical examiner.

"The foregoing statements and answers were untrue, in that prior to the date of said application and medical examiner's report, and in the late spring or summer of 1907, said Clyde H. Bullock suffered from tonsilitis, pleurisy, and rheumatism, and was compelled by said illnesses, or some one or more of them, to quit work for a time, and was treated for rheumatism in Grace Hospital, in the city of Detroit, Michigan, from May 21st to May 29th, 1907, inclusive, and consulted and was treated by Dr. Leonard F. C. Wendt for all three of the above-mentioned illnesses, thus constituting breaches of warranty, which have rendered said policy void and of no effect as a basis of claim against the said defendant."

Upon the trial the plaintiff testified to the age and death of her son and the policy and proofs of death were received in evidence.

Upon the defense the defendant offered in evidence the application and medical examiner's report, from which it appears that the material part in question of said report, as well as the warranty of the truthfulness of statements in the aplication, are correctly set forth in the notice under the general issue above referred to. It will be noticed that this policy was written before Act No. 187 of the Public Acts of 1907 took effect. Dr. Leonard F. C. Wendt was sworn on behalf of defendant, and after testifying that he was a practicing physician in the city of

Detroit, and had been since 1902, and that he was one of the family physicians of the Bullock family in 1907, he said:

"In the year 1907 I treated Clyde Bullock. The treatment began about the 18th of April. I treated him at my office. I treated him several times that month at the office. The dates were the 20th, 22d, 25th, 27th, and 29th, but I think I ought to make a word of explanation. Two or three days, I cannot testify which ones of these dates, were for Mr. Bullock, Sr., two of these dates. There were eight or nine different treatments in the month, from the 18th, but two or three of these were for Mr. Bullock, Sr. Otherwise these others are correct. In the month of May, 1907, I treated him on the 2d, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 15th, 17th, 19th, 20th, and 21st, almost daily up to the 21st of May. All of these treatments were at my office. I next saw him at Grace Hospital daily after the 21st of May until the 30th. He was at the hospital long enough to take his bake, to recover from his bake, and then would have the freedom or permission to go out and about. He stayed at the hospital at night. He came to the office for treatment on the 5th, 6th, and 7th of June, the 13th, 20th, 22d, 28th of July, and the 4th, 6th, 10th, and 15th of August. In my practice I am accustomed to take care of patients at Grace Hospital. * * * During the month of April he was up and around. I frequently saw Clyde Bullock around my place from 1905 to 1907, in the office and house part. I know something about the acquaintance of the young man. He was acquainted at Grace Hospital with all the nurses and most all of the physicians. He was on the list of guests."

The application bears date August 17, the medical examiner's report August 19, 1907.

Dr. Francis Duffield was sworn on behalf of defendant, and testified that he was the medical examiner who made the examination of Clyde H. Bullock when he applied for his insurance. He testified that the same was signed by the applicant, and that he followed his usual practice of asking questions indicated, and put down the answers as they were given. In the course of Dr. Duffield's testimony he testified that had the applicant stated to him

that he had been treated for an attack of tonsilitis in 1907, and had been treated at Grace Hospital for 10 days in the spring and summer of 1907, he would have put it down in his report.

The plaintiff, upon rebuttal, examined Dr. George P. Myer, who testified that he had been closely associated with Dr. Wendt, and that he knew Clyde H. Bullock well, and that he used to meet him with Dr. Wendt, with whom he often drove around in making his calls; that the witness saw Clyde H. Bullock at the time he was at Grace Hospital; that witness had charge of the Pathological library there; and that young Bullock came down into the library once or twice when he was there, and talked with witness. He was at that time up and dressed and around the hospital. At one time, when in the hospital, Dr. Wendt said he would like to have the witness see Bullock; that he called with the doctor and looked Bullock over a little; that he looked like a boy in perfect health, and so acted as far as witness could see. There were no symptoms of illness about him that witness could see to look at him. Witness believes the boy was staying at the hospital nights at that time.

The plaintiff had testified that she visited her son in Grace Hospital in 1907; that he was there about eight or ten days; that he stayed there all the time during that time. On being recalled on rebuttal, the plaintiff testified that her son was very friendly with the nurses at the hospital and was on friendly terms with Dr. Wendt, that no one told him to go to the hospital, and that he went there to board as a convenience.

At the close of the testimony defendant made a motion that the court direct a verdict for the defendant on the grounds:

(1) That it having been shown by testimony which has not been rebutted that Dr. Wendt treated professionally Clyde H. Bullock in the months of April, May, June, July and August, 1907; that he treated him at his office and at Grace Hospital; that none of these visits to the

office or the treatment by the physician at the hospital were mentioned by the applicant in his application for life insurance, nor was Dr. Wendt's name given to the examiner to put in the medical examination—that under these circumstances it became the duty of the plaintiff to prove that Dr. Wendt treated the applicant for a purely temporary ailment, which had not been done.

(2) That a verdict be directed for the defendant because the rule of law is definite and certain that, if an applicant has been an inmate of a hospital, he must so state in answer to the questions; that the applicant in this case did not so state to the examiner, and it does not appear in his report that he was an inmate in Grace Hospital in the month of May, 1907.

The motion to direct a verdict for the defendant was overruled, to which ruling counsel for the defendant excepted. Counsel for the defendant thereupon requested the court to charge the jury as follows:

" (1) You are directed to return a verdict of no cause of action.

" (2) I charge you that the uncontradicted evidence in this case is that the deceased was treated professionally by Dr. Wendt in the late spring and early summer of 1907 numerous times, both at Dr. Wendt's office and at Grace Hospital. The law is that under such circumstances the burden is on the plaintiff to show that the treatment was for some ailment which did not tend to weaken or undermine the applicant's health seriously. That burden has not been met, and you are therefore directed to render a verdict of no cause of action."

Both requests were refused. The case was submitted to the jury, which rendered a verdict for the plaintiff for the full amount of the policy, $1,041.65, and the judgment followed. The defendant has brought the case here by writ of error, and numerous errors are assigned, many of which may be considered together.

The three principal points urged and discussed by appellant at the hearing were as follows:

" (1) That the trial court should have directed a verdict for us on the ground that plaintiff did not meet the burden cast upon her to show that the treatment by Dr.

Wendt, during the months from April to August, 1907, and which was not mentioned in the application or report, was for some ailment which did not tend to weaken or undermine the applicant's health seriously.

"(2) The trial court should have directed a verdict for us on the undisputed evidence that Bullock had been under treatment in Grace Hospital in May, 1907, and same had not been disclosed in the application or report.

"(3) The trial court should have directed a verdict for us on the ground that plaintiff did not meet the burden cast upon her to show that the treatment in Grace Hospital in May, 1907, was for some ailment which did not tend to weaken or undermine the applicant's health seriously."

Under assignments of error Nos. 2, 9, 10, 12, 15, 17, 18, and 20, the defendant urged that the undisputed testimony in the case showed professional treatments of the assured by Dr. Wendt, both at his office and at Grace Hospital during the months of April, May, June, July, and August, 1907; that information as to these treatments and as to the consultation of Dr. Wendt was not given in the application, or in the answers to questions 3a and 3b and in 4, in the medical examiner's report; that, under such circumstances, the burden was on the plaintiff to show that the treatment was for some ailment which did not tend to weaken or undermine the applicant's health seriously. It was contended that that burden was not met in this case, and that the trial court should therefore have directed a verdict in favor of defendant. A careful perusal of the record leads us to say that it was undisputed upon the trial that the assured had the treatments by Dr. Wendt, as already stated. These treatments lasted until a couple of days before he made application for this policy. There is no evidence in the record that Bullock told the examiner about these treatments, and the examiner's report and the undisputed testimony show that he did not. It will be noted that in the notice under the general issue the defendant gave to the plaintiff full information of what it intended to prove in its defense. It named the hospital where the assured had been treated,

and the physician who treated him, and the times when he had been treated. It seems to us very clear that in the examination of Dr. Wendt by defendant's counsel they went as far as they would legally be expected to go in examining an attending physician. In so far as the defendant could go, further examination would have led to privileged matters. *Grand Rapids, etc., R. Co. v. Martin,* 41 Mich. 667 (3 N. W. 173); *Briesenmeister* v. *Knights of Pythias,* 81 Mich. 525 (45 N. W. 977); *Dick* v. *International Congress,* 138 Mich. 372 (101 N. W. 564); *Perry* v. *Insurance Co.,* 143 Mich. 290–294 (106 N. W. 860).

We think that the testimony in the case was sufficient to cast the duty upon the plaintiff to show that the treatment alluded to was for some ailment which did not tend to weaken or undermine the applicant's health seriously. This *prima facie* breach of contract was not overcome by any evidence offered, and, the plaintiff having failed to sustain the burden under this record, it was the duty of the circuit judge to have directed a verdict for the defendant. *Rhode* v. *Insurance Co.,* 129 Mich. 112 (88 N. W. 400). The case cited was an action on a policy of life insurance. The application stated that the applicant had not been under the care of a physician within two years. The testimony showed that applicant had been attended by at least one physician within that time. This court, in disposing of the case, cited *Hann* v. *National Union,* 97 Mich. 513 (56 N. W. 834, 37 Am. St. Rep. 365), *Plumb* v. *Insurance Co.,* 108 Mich. 94 (65 N. W. 611), and then said:

"In each of these cases the plaintiff offered affirmative testimony to show that the treatment of the physician was for some temporary indisposition. Neither of the cases held that it is not sufficient, *prima facie,* to show a breach of a warranty such as that involved in this case, to prove that the insured had in fact been attended by a physician. Indeed, to so hold would be doing violence to the very terms of the stipulation; and, when the defendant in this case was prepared to show that the deceased

had, within two years prior to the making of this application, been attended by one or more physicians, this was *prima facie* a breach of his contract, and the burden would be upon the plaintiff to show that the attendance was not for any ailment which tended to weaken or undermine his health seriously."

See, also, *Brown* v. *Insurance Co.*, 65 Mich. 306 (32 N. W. 610, 8 Am. St. Rep. 894); *Pudritzky* v. *Knights of Honor*, 76 Mich. 428 (43 N. W. 373).

There are other assignments of error, but the questions raised are not likely to occur upon a new trial.

For the error pointed out, the judgment of the circuit court is reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, HOOKER, and BLAIR, JJ., concurred.