*Cause transferred.*

---

THE FARMERS' ELEVATOR COMPANY OF YORKVILLE *et al.* Appellees, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed February 17, 1915.*

1. PUBLIC UTILITIES COMMISSION—*hearing must be had before physical railroad connections can be compelled.* Before physical railroad connections can be compelled by the State Public Utilities Commission between two railroads there must be a hearing, and while technical rules of evidence are not required to be followed, the hearing must be open to the public, all parties interested must be given an opportunity to present evidence, a record must be kept of all the proceedings and the testimony must be taken down.

2. SAME—*in requiring track connections the board does not act in a mere administrative manner.* In requiring track connections between two railways the State Public Utilities Commission does not act in a mere administrative manner, and as the order of the commission results in the taking of property the persons interested must not be denied the right to show that the order is unjust and unreasonable.

3. SAME—*final order compelling track connections must not be made on an ex parte examination.* A final order by the State Public Utilities Commission compelling track connections between two railroads must be based upon evidence presented at a public hearing, with full opportunity to the parties to present evidence and cross-examine witnesses, and should not be based upon an *ex parte* examination or an investigation by agents of the commission.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

M. L. BELL, and A. B. ENOCH, for appellant.

EVERETT JENNINGS, GEORGE M. MORGAN, and STEVENS & HERNDON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Sangamon county affirming an order of the State Public Utilities Commission of Illinois requiring a connection of the railroad of appellant, the Chicago, Rock Island and Pacific Railway Company, with the Fox and Illinois Union railroad at the city of Morris, Illinois.

Some difficulty arises in investigating this record because a large part of it refers to matters other than the order here in question. When the complaint was first filed with the State Public Utilities Commission the Farmers' Elevator Company of Yorkville was the only complainant and the Fox and Illinois Union Railroad Company and the Chicago, Burlington and Quincy Railroad Company were the only defendants, the prayer of the complaint being based on discrimination in rates. Later on, before the hearing was had, an amended petition was filed, including as defendants, in addition to those already named, the Chicago, Rock Island and Pacific Railway Company and the Chicago, Ottawa and Peoria Railway Company, and praying for joint rates between said four defendant corporations, and also for the installation of a physical connection between the Fox and Illinois Union Railroad Company and the Chicago, Rock Island and Pacific Railway Company, and between the Fox and Illinois Union Railroad Company and the Chicago, Ottawa and Peoria Railway Company. The first hearing before the commission was held May 12, 1914. Appellant herein, not having been notified, was not

present at that hearing, and so, it is conceded, is not bound by that portion of the testimony heard on that date now found in the record. On May 13, 1914, appellant railway company was notified, and on that day its representatives entered its and their appearance, the hearing then being continued until May 27, 1914. On that last mentioned date the complainants reduced their complaint against appellant railway company to the single question of the installation of a physical connection between it and the Fox and Illinois Union Railroad Company. The last named is an electric railway, extending from Yorkville, on the Chicago, Burlington and Quincy railroad, to Morris, on the railway of appellant company. We judge from the record that the electric road has no cars of its own for the handling of freight, and depends on any connection it may have for equipment for loading grain on its lines for points off its lines. Considerable testimony was taken before one of the commissioners of the State Public Utilities Commission on the last mentioned date bearing on the question of the physical connection between the two railways in question. It is shown from the testimony introduced and from the informal discussion that took place on the hearing during that day, that appellant company did not have so much objection to making the physical connection as to the place of connection, proposing through its engineer that such connection be made either east or west of appellant company's yards, which would require the building of considerable additional track and the condemnation of property by the electric road if made east of the yards, and its extension through a subway to be built under the appellant company's tracks and apparently connecting with the tracks of the Chicago, Ottawa and Peoria Railway Company, which at this point run south of and substantially parallel with the main Rock Island tracks, if the connection was to be made west of the yards. The electric road, on the contrary, wished the connection made with some of the switch or

side-tracks in appellant company's yards, one or two points being discussed and some testimony taken as to where such connection should be if made in said Rock Island yards. It was finally decided by the commissioner that the question of the subway to the west should not be considered at that time, but that the representatives of the Fox and Illinois Union Railroad lines should submit to the commission and to appellant a tentative draft of an order requiring a connection at some point in the railroad yards and the representatives of appellant company should then shortly file any criticism or objection to the order, the commissioner saying, in substance, at the conclusion of the discussion, that on the filing of any such objections it might be necessary for all to get together again. With this understanding the hearing adjourned. The tentative order was drawn providing for the connection at a certain point in appellant's switch yard, and a copy submitted on June 1 to the commission and to the representatives of the appellant company. That company filed its written objections to said tentative order on June 3, 1914. On or about July 20 appellant company received an amended order of the commission directing the installation of the physical connection prayed for in complainants' petition,—that is, a connection in the railroad yards of appellant. No further hearing was had after said May 27, 1914, by the commission or any member thereof.

A part of said amended order reads: "The evidence submitted to the commission concerning the practicability of installing said track connections at Morris, Illinois, being conflicting, and desiring to be advised fully as to same, the commission caused an investigation to be made of the proposed connection. As a result of this investigation it finds as to the track connections between the Fox and Illinois Union railroad and the Chicago, Rock Island and Pacific railroad that such a connection is practical at a point where an extension of the main track of the said Fox and

Illinois Union Railroad Company would connect with what is known as the elevator track of the said the Chicago, Rock Island and Pacific Railway Company at a point one hundred and ten (110) feet south of the south line of Wauponsee street, at Morris, Illinois. As to this connection it is contended by the Chicago, Rock Island and Pacific Railway Company and certain shippers located on the line of the elevator track, that a track connection at the point designated would interfere not only with the business of the railroad company but with the industries located on the track in question. From an investigation of the method of handling cars by the Chicago, Rock Island and Pacific Railway Company for the industries located on said elevator track, it would appear that the railway company finds it necessary to move and shift cars for the industries referred to from two (2) to four (4) times per day, depending upon the season and the amount of business handled by the industries, from which it would appear that there would be no difficulty in handling cars to and from said track connection at such times as the Chicago, Rock Island and Pacific Railway Company finds it necessary to shift cars on the elevator track for industries located thereon."

Counsel for the appellant insist that this amended order was entered without a hearing, or at least an adequate hearing, as that term must be understood under said Public Utilities act. From the provisions of said act, especially sections 45, 60 and 65, (Laws of 1913, p. 460,) it is apparent that before such physical railroad connections can be compelled by the State Public Utilities Commission between two railways there must be a hearing, and that while technical rules of evidence are not required to be followed, the hearing must be open to the public. All parties interested who are to be bound by the decision must be given an opportunity to present evidence and be present, if they wish, during the entire hearing. On a hearing such as this, under said section 65, a record should be kept of all pro-

ceedings, and "all testimony shall be taken down by a stenographer appointed by the commission, and the parties shall be entitled to be heard in person or by attorney."

The Public Utilities statute is in many of its features similar to the United States statute creating and governing the acts of the Inter-State Commerce Commission. The Supreme Court of the United States, in construing that statute, has held that the Inter-State Commerce Commission in requiring track connections was not acting in a mere administrative manner, but as such an order as this resulted in the taking of property, therefore the persons interested must not be denied the right to show, as a matter of law, that such order was unjust or unreasonable. (*Oregon Railroad and Navigation Co.* v. *Fairchild*, 224 U. S. 510.) That court has also held that the commission, in matters of this kind, is acting in a *quasi* judicial capacity, and while not limited to the same strict rules of law as to the admissibility of evidence as prevails in suits between private parties, (*Inter-State Commerce Com.* v. *Blair*, 194 U. S. 25,) yet "the more liberal the practice in admitting testimony the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the commissioners cannot act upon their own information, as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding, for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown but presumptively sufficient information to support the finding." *Inter-State Commerce Com.* v. *Louisville and Nashville Railroad Co.*

227 U. S. 88; see, also, *United States* v. *Baltimore and Ohio Southwestern Railroad Co.* 226 id. 14.

This reasoning as to hearings under the Inter-State Commerce law applies with peculiar force to hearings of this nature under the act here being considered. Allowing the testimony to be heard by the commission, or one of its members, without any opportunity to cross-examine the witnesses presenting it, amounts to a practical denial of the vital part of the hearing required by this statute. The words "public hearing" before any tribunal or body, by the accepted definitions of lexicographers and courts, mean the right to appear and give evidence and also the right to hear and examine the witnesses whose testimony is presented by opposing parties. See *Dick* v. *Supreme Body of International Congress,* 138 Mich. 372; 4 Words and Phrases, 3236; 2 id. (2d series) 832, and cases cited; 21 Cyc. 408, and cases cited.

Counsel for appellees insist that the situation is different on this record than is shown in the decisions of the United States courts just referred to; that in those cases evidence was not heard on behalf of the party objecting, while in this case appellant company had the opportunity of introducing all the evidence that its counsel desired on the hearing of May 27, 1914; that the view of the premises by the commission must be considered similar to the view of property by the jury during condemnation proceedings. With this we do not agree. A fair construction of the amended order entered by the commission shows that none of the commissioners visited Morris personally to look over the premises involved, but that the commission "caused an investigation to be made" and "as a result of this investigation" entered the order in question. The finding of the commission was not based upon the evidence heard by it or one of its members, but clearly upon the investigation that it caused to be made. This construction of the order is in accordance with the facts as shown by

the record. Furthermore, an order of this nature must be based upon the evidence presented in the public hearing, with a full opportunity to cross-examine the witnesses and present, if desired, evidence in rebuttal, and not upon an *ex parte* examination. In no other way can the interested party maintain his rights or make his defense.

Counsel for appellees further contend that appellant at the hearing of May 27, 1914, in effect agreed that there need be no further public hearing as to the tentative order for the physical connection. While the commissioner in charge of the hearing made some statements during its progress that might be construed as showing that that was his understanding as to what was to be done, considering all that he did say on that question the conclusion must be reached that it was assumed that appellant company was to be heard further if it objected to any part of the tentative order. Moreover, we find nothing stated in the record by the representatives of the appellant company at this hearing that indicated anything to the contrary or in any manner waived their right to present further testimony to the commission. The written objections filed by said company to the tentative order are in entire accord with this view.

For the reasons indicated it must be held that the final amended order of the commission in this matter was entered without authority. This holding renders it unnecessary for us to consider the other questions raised by counsel for appellant,—that the evidence does not show a public necessity for the taking of property, and that the subject matter of the complaint was not within the jurisdiction of the State Public Utilities Commission.

The judgment of the circuit court must be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*