(No. 36802.—

NORTH FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Appellant, *vs.* CONRAD F. BECKER, Director of Financial Institutions, *et al.,* Appellees.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

DALLSTREAM, SCHIFF, HARDIN, WAITE & DORSCHEL, of Chicago, (ALBERT E. HALLETT, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and AUBREY KAPLAN, Assistant Attorneys General, of counsel,) for appellee the Director of Financial Institu-

tions; and FISCHEL, KAHN, HEART & WEINBERG, of Chicago, (JACK A. DIAMOND, of counsel,) for appellee Apollo Savings and Loan Association.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Apollo Savings and Loan Association (Apollo) applied to the Director of Financial Institutions for permission to move its location from 3932 West Madison Street to "the vicinity of Chicago Avenue and Michigan Avenue," in Chicago. North Federal Savings and Loan Association of Chicago (North Federal) and other financial institutions objected. A hearing was had, and the Director ultimately approved the proposed change of location. In this administrative review action instituted by North Federal, the circuit court of Cook County affirmed the decision of the Director, and North Federal has appealed directly to this court. Ill. Rev. Stat. 1961, chap. 32, par. 864.

In the trial court the Attorney General, representing the Director, had moved to dismiss North Federal's complaint on the ground that it lacked standing to maintain its administrative review action. The motion was denied. In this court the Attorney General conceded upon oral argument that North Federal has the requisite standing, but Apollo argues that it does not. North Federal contends that the decision of the Director was against the manifest weight of the evidence, and that in any case the proceedings were so conducted as to deprive it of a fair hearing. Both the Attorney General and Apollo maintain that the Director's order was sustained by the evidence, but the Attorney General conceded upon oral argument that the proceeding was so conducted as to deprive North Federal of a fair hearing. Apollo does not discuss this issue.

With the case in this posture, we consider first Apollo's attack upon North Federal's standing to challenge the decision of the Director. That attack is based upon *American*

*Surety Co.* v. *Jones*, 384 Ill. 222, and upon the proposition that the Illinois Savings and Loan Association Act "does not confer upon competitors the right to challenge the approval by the Director of a change of location."

The *American Surety Co.* case involved an application to the Director of Insurance for the renewal of a certificate authorizing underwriters at Lloyds to transact business in this State. Seventeen other foreign insurance companies filed a petition with the Director opposing the renewal of Lloyds' certificate of authority. The Director granted the certificate and the companies brought an action to review that decision. Under the applicable statute the renewal of a certificate of authority of a foreign company was automatic. No provision was made for any notice or hearing unless the application was to be denied, and in that case notice was to be given only to the applicant. The court found that the statute imposed no duty upon the Director to conduct an investigation or hearing. Under those circumstances the court resorted by analogy to the standards applied to the right of a person not a party to an action to sue out a writ of error, and held that the interest of the seventeen companies was not sufficiently direct to allow them to maintain the action, saying, at page 230: "Any prejudice resulting to them from the granting of the renewal of the certificate of authority to Lloyds was at most an indirect or inconsequential [*sic*] result thereof. It appears that the only possible interest appellants could have in this case would be to be free from the competition of a company that had not complied with the provisions of the code." 384 Ill. at 230.

There are marked differences between the statute involved in the *American Surety Co.* case and the statute now before us. The Illinois Savings and Loan Association Act makes plain its purpose to control competition and its concern for the interests of existing associations.

Section 1—2 states as a declaration of legislative policy, "(c) That the number and minimum size of the associations

conducting such business should be controlled in the interest of securely and efficiently serving the needs of the localities in which they operate;" section 2—4 provides that the Director shall not approve an application for a permit to organize an association unless he finds, "(e) That such association can be established without undue injury to properly conducted existing associations," and section 3—4, which relates to amendments of bylaws and so is directly involved in this case, provides: "(h) If a by-law amendment provides for a change in the location of an association's business office to a location which is more than one mile distant from the existing location, the Director shall not approve the amendment unless he finds that (1) a need exists for an association in the proposed new location; * * * (3) the proposed change of location can be effected without undue injury to other properly conducted associations; and (4) notice of the association's proposal to change location has been published at least once in the community of the proposed new location." Ill. Rev. Stat. 1959, chap. 32, pars. 702, 724, 744.

The statute provides for an administrative hearing at the instance of any person "aggrieved," and for judicial review of an administrative decision by "any person affected." (Ill. Rev. Stat. 1959, chap. 32, pars. 861, 864.) The legislature has plainly stated its intention to protect the competitive position of existing associations with respect to the location, or change of location, of other associations, and we therefore hold that a member of the protected group is a person "aggrieved" or "affected" within the meaning of the act. (See, *Federal Communications Com.* v. *Sanders Brothers Radio Station,* 309 U.S. 470, 84 L. ed. 869; 3 Davis, Administrative Law, sec. 22.11; Jaffe, Standing to Secure Judicial Review, 75 Harv. L. R. 255, 266; *Chicago Railways Co.* v. *Commerce Com. ex rel. Chicago Motor Coach Co.* 336 Ill. 51; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309

Ill. 87; *Choate* v. *Commerce Com.* 309 Ill. 248.) The trial court correctly held that North Federal does not lack standing to maintain its action.

North Federal's claim that it was deprived of a fair administrative hearing requires a brief summary of what transpired before the Director. The administrative proceeding began with Apollo's letter to the Director requesting permission to move its headquarters, at an unstated future date, from 3932 West Madison Street to the vicinity of Chicago Avenue and Michigan Avenue. The Director responded by acknowledging receipt of the letter and transmitting a suggested form of notice "relative to the Hearing to be held in connection with this change of location." Thereafter notice was published and objections were filed by North Federal and others. Hearings were conducted by a hearing officer, at which the attorney for Apollo testified as to the population and other characteristics of the area into which Apollo proposed to move. The objector, North Federal, presented five witnesses who described the area and its existing financial institutions; some of them testified that if Apollo was granted permission to move into the area existing institutions would suffer undue injury. Both sides closed their proofs on April 20, 1960. On May 3, 1960, the hearing officer filed his report with the Director. He did not send a copy to North Federal or to any of the other objectors.

On May 19, 1960, the Board of Savings and Loan Advisers met in Springfield and determined that further evidence was needed before a decision could be reached. This determination does not appear to have been communicated to the objectors. On May 20, the president of Apollo sent a letter to the Director setting forth its reasons for desiring to move. No copy of this letter was sent to the other parties. Thereafter Apollo also sent to the Director a 29-page written argument accompanied by numerous supporting documents. Again, no copy of this material was sent to the other parties.

On December 13, 1960, the Board of Advisers met and recommended that the Director approve the change of location. On December 23, the Director made a formal determination which contained the findings required by the statute and approved the change of location.

Thereafter North Federal and another objector, Swedish Home Savings and Loan Association, each filed with the Director a notice of intent to ask for a hearing and each also filed a "Complaint by Aggrieved Party" demanding a hearing on the Director's decision. No action was taken with respect to these complaints and demands for hearing, and no hearing was had. North Federal then notified the Director of its intention to seek review under the Administrative Review Act, and subsequently commenced this action.

We think that the objectors correctly interpreted the statute, and that they were entitled to a hearing. Section 7—20 of the act provides that "any person who deems himself aggrieved by any decision, order, or action of the Director may receive a hearing as provided in Sections 7—21 through 7—24 of this Act." Section 7—21 then provides: "The Director may upon his own motion and shall upon the verified complaint in writing of any person setting forth facts which if proved would constitute grounds for reversal or change of any decision, order or action grant a hearing thereon. If the aggrieved party desires such a hearing, he shall, within 10 days of receipt of notice of such decision, order or action, file written notice with the Director of intent to demand a hearing and shall, within 30 days of receipt of notice of such decision, order or action, file his verified complaint in writing. * * *" Ill. Rev. Stat. 1959, chap. 32, pars. 861-863.

The statute thus contemplates a formal hearing, upon demand by an aggrieved party, after the decision, order or action of the Director. The sections of the statute which provide for the appointment of the "Board of Savings and

Loan Association Advisers" and authorize them to make recommendations as to many matters, including specifically changes of location, contemplate action by the Board of Advisers prior to the Director's determination. (Ill. Rev. Stat. 1959, chap. 32, pars. 857-859.) They do not contemplate that the Board shall perform any role with respect to the subsequent formal hearing. It is clear from the record, however, and from the position of the Director both in the trial court and in this court that he did not so construe the statute, but rather regarded the proceedings that took place prior to his determination as the only administrative hearing required.

Even if the Director's interpretation of the statute was correct, and the proceedings that took place before his determination was made could be regarded as the formal hearing that the statute contemplates, North Federal would not have received a fair hearing. It is settled, as the Attorney General concedes, that in such a proceeding the administrative officer may not receive evidence and argument submitted to him by one of the parties without notice to the others. *Farmers' Elevator Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 567; *Bereda Mfg. Co.* v. *Industrial Board,* 275 Ill. 514.

The administrative proceeding was thus defective, and it follows that the judgment of the circuit court of Cook County must be reversed, and the cause remanded to that court with directions to set aside the determination of the Director.

*Reversed and remanded, with directions.*